IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| RICK SHIMITZ and DARCEY SHIMITZ, on their own behalf and as natural guardian, parent and next friend to CHAD SCHROEDER,<br><br>Plaintiffs,<br><br>v.<br><br>TYSON FRESH MEATS, INC., f.k.a. IBP, Inc.,<br><br>Defendant. | CASE NO.  8:01CV27<br><br>MEMORANDUM<br>AND ORDER |

This matter is before the Court on several motions. The Plaintiffs, Rick Shimitz and Darcey Shimitz, who have sued on their own behalf and as parent and next friend to Chad Schroeder, have filed motions seeking 1) reconsideration of the Court's decision to exclude Kaye Kilburn, M.D., as an expert witness for the Plaintiffs; 2) an order for partial summary judgment on certain issues relating to the nuisance claim based on collateral estoppel; and 3) reconsideration of the Court's Memorandum and Order relating to the Defendant's statute of limitations defense. The Defendant, Tyson Fresh Meats, Inc., formerly known and referred to herein as "IBP," has filed a motion seeking leave to depose Plaintiff Rick Shimitz. The motions have been fully briefed, and each will be briefly addressed below.

The case brought by Plaintiffs Rick and Darcey Shimitz is the final pending case of thirteen cases filed between 2000 and 2002 by homeowners living near wastewater treatment lagoons located on IBP's property near South Sioux City. The thirteen cases were consolidated for all pretrial proceedings, but not for trial. In 2004, the first of the cases was tried to a jury on a claim of nuisance, and the jury found in favor of the plaintiff, Carol Marmo. *Carol Marmo v. IBP, Inc.,* Case No. 8:00CV527 (D. Neb.) Marmo appealed

certain pretrial rulings of this Court and the jury's award, and the other cases were stayed pending the appeal.  This Court's order and the jury's verdict were affirmed by the United States Court of Appeals for the Eighth Circuit in *Marmo v. Tyson Fresh Meats, Inc.,* 457 F.3d 748 (8th Cir. 2006).  The remaining cases, excepting only the *Shimitz* case, have been settled.  The *Shimitz* case proceeds to trial on claims of nuisance and negligence.

**Kaye Kilburn, M.D.**

The Plaintiffs ask the Court to reconsider the Court's prior decision to exclude Kaye Kilburn, M.D., as an expert witness in this case.  (Filing No. 432).  Plaintiffs contend that they are uniquely and adversely affected by the Court's order excluding Dr. Kilburn from testifying in the case because Darcey Shimitz was examined by Dr. Kilburn at length and independent of his epidemiological work for the United States Department of Justice. Plaintiffs also contend, as they previously have contended, that the United States Court of Appeals for the Eighth Circuit somehow clarified the law applicable to the disclosure of expert witnesses and rebuttal witnesses, and that the Plaintiffs should be permitted to reconsider their prior decision to withdraw Dr. Kilburn based on their current understanding of the law.  Neither argument persuades the Court that Dr. Kilburn should be permitted to testify in this trial.

IBP opposes the motion.  IBP argues that 1) there has been no change in the law that would justify reinstatement; 2) Dr. Kilburn's testimony cannot satisfy the standard articulated in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), which the Plaintiffs have all but admitted; and 3) reinstatement of Dr. Kilburn would reopen all phases of expert discovery to the unfair prejudice of IBP.

The Court will repeat the procedural history relevant to this motion one more time in the interests of convenience and completeness. Pursuant to the Court's progression order, the Plaintiffs identified Kaye Kilburn, M.D., as their expert medical witness on March 1, 2002, which was the deadline for Plaintiffs' expert witness disclosures. (Filing Nos. 33 and 42). Thereafter, Plaintiffs filed several motions for extensions of deadlines, including an extension of "Plaintiffs' rebuttal expert deadline," which the Court granted. (Filing Nos. 82, 91, 154, 160, 174, and 177). The final amended deadline for disclosing "rebuttal" witnesses was April 14, 2004. (Filing Nos. 185, 189). On that date, the Plaintiffs filed notice that they had served "supplemental materials to the *expert report* of Kaye H. Kilburn and *expert rebuttal reports* from Harriet M. Ammann, Mark D. Ewen, James Joyce, Renee M. Kalmes, Lisa A. Morrow, William J. Meggs, Robert E. Unsworth, and John M. Warmerdam." (Filing No. 189)(emphasis added).

The admissibility of Dr. Kilburn's testimony became the subject of IBP's timely-filed motion in limine on November 12, 2004. (Filing No. 268). IBP brought the motion on the grounds that the proposed testimony was inadmissible under Fed. R. Evid. 702 and the standards set forth in *Daubert*. (Filing No. 268). IBP's brief in support of the motion, which was also supported by evidence, argued that Dr. Kilburn's opinions as stated in his expert witness report did not have the indicia of reliability and trustworthiness required by *Daubert*. (Filing Nos. 288, 290). Plaintiffs responded to the motion in limine by filing a motion to substitute a rebuttal medical expert witness, Dr. Meggs, in place of Dr. Kilburn. (Filing No. 300). However, before the Court ruled on the motion to substitute, Plaintiffs formally and voluntarily withdrew Dr. Kilburn as an expert in the case (Filing No. 310). Thus, the Plaintiffs knowingly risked withdrawing Dr. Kilburn in all the cases, not just the *Marmo* case,

before they knew whether the Court would allow Dr. Meggs to testify in their cases-in-chief. The Court denied the Plaintiffs' attempt to designate a new medical expert witness for their cases-in-chief, concluding that any such designation would be untimely, would unfairly and substantially prejudice the Defendant, and would unreasonably delay the trial of the aging cases.

When Carol Marmo appealed her case against the Defendant to the United States Court of Appeals for the Eighth Circuit, one of the issues presented was whether this Court acted within its discretion in refusing her request to substitute Dr. Meggs, whom she disclosed and identified as a rebuttal witness, for Dr. Kilburn. The Eighth Circuit Court affirmed this Court in all respects, including this Court's refusal to allow the substitution of the rebuttal witness for Dr. Kilburn. *Marmo v. Tyson Fresh Meats, Inc.,* 457 F.3d at 748.

It is against this background that the Shimitzes ask this Court to reconsider its order excluding Dr. Kilburn. They raise two arguments in support of their motion for reconsideration. One argument was raised in connection with the related case prosecuted by Murray and Joan Larson, Case No. 8:00CV529. The Shimitzes re-assert the argument that the Eighth Circuit Court somehow "clarified" the law on primary and rebuttal expert witnesses designations in affirming this Court's decision in *Marmo*. As I have previously stated in *Larson*, the Court rejects the notion that there was ambiguity in the law of this Circuit that needed clarification. The Plaintiffs' previous reliance on law from other circuit courts to support their argument that the Court should have permitted the substitution of rebuttal witnesses for primary witnesses does not create ambiguity in the law of the Eighth Circuit Court.

4

The distinction between evidence offered in a case-in-chief and evidence offered in rebuttal is made in the progression orders used by the Court. This distinction has long been observed by the Eighth Circuit Court.[1] The distinction was recognized by the Plaintiffs in their notice regarding their disclosure of rebuttal experts. (Filing No. 189). Indeed, the Plaintiffs acknowledged this distinction in preparing their cases, and the Defendant relied on this distinction in preparing its defense. This Court allowed the parties more than sufficient time in 2001 and 2002 to arrange for and to disclose the primary expert witnesses who would be called by the parties in their cases-in-chief. Plaintiffs and Defendant complied. When the Plaintiffs sought additional time to identify "rebuttal" experts, as they were expressly identified in the progression orders, the Court granted several extensions of time. For these reasons, the Court is not persuaded by Shimitzes' first argument that *Marmo* revealed a long-awaited clarification in the law.

The Shimitzes also argue that Dr. Kilburn's examination of Darcey Shimitz is based on differential diagnosis, a methodology that has long been accepted as valid by the Eighth Circuit Court. The Plaintiffs contend that Dr. Kilburn should be permitted to testify because IBP would not be prejudiced in that IBP has had sufficient time to prepare its defense, and because the Plaintiffs would be unfairly prejudiced if Dr. Kilburn were

---

[1] For a relatively *recent* example, see *Gossett v. Weyerhaeuser Co.,* 856 F.2d 1154, 1156 (8th Cir. 1988), in which the Court stated:

> Normally, parties are expected to present all of their evidence in their case in chief. Allowance of a party to present additional evidence on rebuttal depends upon the circumstances of the case and rests within the discretion of the individual most able to weigh the competing circumstances, the trial judge." *Smith v. Conley,* 584 F.2d 844, 846 (8th Cir. 1978) (quoting *Skogen v. Dow Chem. Co.*, 375 F.2d 692, 705 (8th Cir. 1967)). Accordingly, we may reverse a trial court's determination of the admissibility of rebuttal testimony only where there has been a clear abuse of discretion.

*Id.* (some citations omitted).

excluded. Plaintiffs explain that Dr. Kilburn will testify regarding his opinions as to her diagnoses, causation, and resulting physical effects. These are specifically described in documents that the parties have filed under seal. (Filing No. 290, Davidson Aff. Ex. 21, p. 7; Filing No. 446).

It is true that IBP had sufficient time to prepare for the testimony of Dr. Kilburn because he was timely disclosed. This preparation included the retention of IBP's own expert witnesses and the filing of a motion in limine to exclude Dr. Kilburn based on the unreliability of his methodology and opinions. It was in response to the filing of this *Daubert*-type motion that the Plaintiffs, including the Shimitzes, voluntarily withdrew Dr. Kilburn as an expert witness in this case. In voluntarily withdrawing Dr. Kilburn from the case and in seeking the substitution of an expert witness identified by the Shimitzes as a rebuttal witness, the Plaintiffs made the following concession:

> "Plaintiffs acknowledged that IBP has raised some significant issues regarding the methodology used by Dr. Kilburn to conduct the epidemiological investigation for the United States Department of Justice."

(Filing No. 310).

Now, in connection with this motion for reconsideration, the Shimitzes argue that Dr. Kilburn is qualified to testify as to his examination of Darcey Shimitz and to provide his expert opinion regarding causation, diagnosis, and prognosis relative to her physical condition. They argue that Dr. Kilburn employed "classic differential diagnosis techniques in developing his medical opinions" regarding Darcey Shimitz.

Following *Daubert*, this Court must consider in the first instance whether "the reasoning or methodology underlying the testimony is scientifically valid and . . . whether that reasoning or methodology properly can be applied to the facts in issue. *Daubert,* 509

U.S. at 592-93. The Plaintiffs argue that Dr. Kilburn employed a proper differential diagnosis methodology as described by the Eighth Circuit Court:

> In performing a differential diagnosis, a physician begins by 'ruling in' all scientifically plausible causes of the [patient's] injury. The physician then 'rules out' the least plausible causes of injury until the most likely cause remains.

*Glastetter v. Novartis Pharms. Corp.*, 252 F.3d 986, 989 (8th Cir. 2001). The Plaintiffs also cite *Kudabeck v. Kroger*, 338 F.3d 856, 861 (8th Cir. 2003).

IBP argues that the Plaintiffs cannot overcome the requirements of Fed. R. Evid. 702 and *Daubert*, and that the methodology used by Dr. Kilburn is not a proper differential diagnosis. IBP contends that even though Dr. Kilburn conducted a physical examination of Darcey Shimitz that was independent of the epidemiological study, Dr. Kilburn employed the same, flawed techniques and tests on Darcey Shimitz as he used on the other plaintiffs to formulate his unsupported opinions. (Filing Nos. 288 and 290).

The Court has reviewed the arguments made and the evidence offered by IBP to show that Dr. Kilburn's "differential diagnosis techniques" are unreliable. The Court finds that Dr. Kilburn admitted that he did not review Darcey Shimitz's medical records. (Filing No. 290, Kilburn Dep. 43:20-44:8). Dr. Kilburn also admitted that he could not quantify the exposure to hydrogen sulfide experienced by any of the plaintiffs. (Kilburn Dep. 77:14-19). Based on results of "neurobehaviorial testing performed by his staff," Dr. Kilburn concluded that Darcey Shimitz had seven abnormalities, and he concluded that "a causal connection of hydrogen is most likely cause." [sic] (Filing No. 290, Davidson Aff. Ex. 21, Kilburn Report on Shimitz; see also Kilburn Dep. 78:10-14). Dr. Kilburn admits that much of the neurobehaviorial testing that he or his staff performed on the plaintiffs, including Darcey

7

Shimitz, was developed by Dr. Kilburn and his staff. Many of these tests were not shown to be objectively measurable nor accepted as diagnostic tools by the medical profession generally. With regard to at least one diagnostic test that he has used as an indicator of brain problems, Dr. Kilburn admitted that the test had not been used on people with no known brain problems. (Filing No. 290, Kilburn Dep. 363:8-14).

The cases cited by both Plaintiffs and Defendants are helpful to the Court. In *Glastetter,* the district court excluded the differential diagnoses performed by Glastetter's expert physicians finding that they lacked a proper basis for "ruling in" a specific medication as a potential cause of intra cerebral hemorrhage. The district court found that the "data and methods of plaintiffs' experts are not scientifically valid bases" for the conclusion that the medication can cause an intra cerebral hemorrhage in a human. The Eighth Circuit Court agreed.

In *Kudabeck,* the Eighth Circuit Court emphasized the importance of considering a person's medical records and history in conducting a proper differential diagnosis. In that case, the Court upheld the admissibility of a chiropractor's opinion as supported by a proper differential diagnosis. The chiropractor opined that the plaintiff's fall had triggered the onset of degenerative disc disease. The Court found that the chiropractor's differential diagnosis had properly ruled out other potential causes. The chiropractor had not simply relied on the plaintiff's self-reported medical history, but the chiropractor had also relied on a medical doctor's comparison of X-rays taken before and after the fall to demonstrate the absence of a history of degenerative disc disease.

In this case, I find Dr. Kilburn's methodologies are unreliable and incomplete. He has not demonstrated that exposure to hydrogen sulfide gas can cause all the physical

problems that he has diagnosed in Darcey Shimitz, specifically including the first diagnosis listed in his report on Darcey Shimitz. Moreover, Dr. Kilburn's report on Darcey Shimitz and deposition testimony do not reflect that he has attempted to eliminate the possibility of other causes for Darcey Shimitz's problems. He has failed to review her medical records, and he does not address the possibility that her symptoms are caused by any other neuropathic agent or physiological or psychological condition. For these reasons, the Court finds no good reason to disturb the Court's prior ruling excluding Dr. Kilburn on the basis that Darcey Shimitz's experience with Dr. Kilburn is somehow unique. Plaintiffs' motion for reconsideration is denied.

**Collateral Estoppel**

The Shimitzes seek summary judgment on their nuisance claim against the Defendant based on an offensive, non-mutual use of the collateral estoppel doctrine. The Shimitzes contend that the doctrine bars IBP from relitigating several issues determined in the related case *Carol Marmo v. Tyson Fresh Meats*, 8:00CV527 (D. Neb. 2005) *aff'd*, 457 F.3d 748 (8th Cir. 2006). IBP opposes the motion and has offered evidence in support of its argument that the differences between this case and the *Marmo* case preclude the use of collateral estoppel against IBP for the *Shimitz* case. (Filing Nos. 447, 448).

The Nebraska Supreme Court has stated, "the applicability of the doctrine of collateral estoppel . . . constitutes a question of law." *Kopecky v. National Farms, Inc.*, 510 N.W.2d 41, 48 (Neb. 1994), citing *Petska v. Olson Gravel, Inc.*, 500 N.W.2d 828 (1993). It is for the Court to determine whether collateral estoppel in this case is appropriate.

The Shimitzes assert that the doctrine of collateral estoppel bars IBP from re-litigating the existence of a nuisance in this case. "Under the doctrine of collateral

9

estoppel, or issue preclusion, when an issue of ultimate fact has been determined by a final judgment, that issue cannot again be litigated between the same parties in a future lawsuit." *Eicher v. Mid America Financial Inv. Corp.,* 702 N.W.2d 792, 809 (Neb. 2005). The Nebraska Supreme Court has identified "four conditions that must exist for the doctrine of collateral estoppel to apply: (1) the identical issue was decided in a prior action, (2) there was a judgment on the merits which was final, (3) the party against whom the rule is applied was a party or in privity with a party to the prior action, and (4) there was an opportunity to fully and fairly litigate the issue in the prior action." *Kopecky,* 510 N.W.2d at 48. The Nebraska Supreme Court has also recognized that "[t]he doctrine of issue preclusion recognizes that limits on litigation are desirable, but a [party] should not be denied a day in court unfairly." *Vincent v. Peter Pan Bakers, Inc.*, 153 N.W.2d 849, 849 (Neb. 1967). It does not matter that the Shimitzes were not parties to the prior suit, as non-parties to the original judgment may raise collateral estoppel offensively against losing parties. *See Parklane Hosiery Co. v. Shore*, 439 U.S. 322 (1979).

The Court previously ruled in the related case brought by Murray and Joan Larson that, based on the judgment in *Marmo,* IBP was barred from re-litigating the following:

a)  In the operation of its wastewater treatment facility, IBP released hydrogen sulfide gas into the air;

b)  IBP's release of hydrogen sulfide gas interfered with the Larsons' use and enjoyment of their residential property; and

c)  IBP's interference with the Larsons' use and enjoyment of their residential property was intentional.

The Shimitzes argue that, as in *Larson*, all four conditions necessary for collateral estoppel are present in this case.  I disagree.

There are significant differences between the facts in *Marmo* and *Larson* and the facts in *Shimitz*.  The first difference is that the Shimitzes originally resided approximately one mile northwest of the lagoons, in the same general direction as the Marmo and Larson residence, but in 1999, the Shimitzes moved to a residence that was even closer to the lagoons, but also south and west of the lagoons.   A second difference is that, unlike Carol Marmo and Murray and Joan Larson, Darcey Shimitz was an employee of IBP, and she claims to have experienced occupational exposure to the hydrogen sulfide gas.  A third difference is that IBP intends to assert a defense of coming to the nuisance in this case, which was not available in *Marmo* and not available in the same manner against the *Larsons*, given the Shimitzes' decision to move closer to the lagoons with knowledge of the release of hydrogen sulfide gas.  Based on these factual differences,  the Court finds that the main purpose supporting the offensive use of collateral estoppel, to promote judicial economy and to prevent needless litigation, will not be served by its use in this case.  *See Parklane Hosiery*, 439 U.S. at 326.  C. Wright & R. Miller, *Federal Practice & Procedure,* § 4465 at 738-39 (2002).

Perhaps the greatest difference, however,  is that the Shimitzes have a negligence claim against IBP.  Because of the negligence claim, the Court must consider the risk of distortion, as described by Wright & Miller in § 4465, and the risk of jury confusion in determining whether collateral estoppel should apply in this case.  Because the Court finds that there is a high risk that the jury could be confused and the issues could be distorted if the Court were to force IBP to defend against negligence yet bar it from relitigating

11

whether the release of hydrogen sulfide gas was intentional or unreasonable, the court will deny the motion in limine relative to collateral estoppel. Where "treating the issue as conclusively determined may complicate determination of issues in the subsequent action or prejudice the interest of another party thereto" the issue preclusion is inappropriate. Restatement (Second) of Judgments § 29(6).

The Court could bar IBP from relitigating the fact that "in the operation of its waterwater treatment facility, IBP released hydrogen sulfide gas into the air," but in actuality, that fact is not in dispute. The amount of hydrogen sulfide gas that was released, where it was released, and the effect, if any, of the release upon the individual plaintiffs are at issue. Because the facts surrounding the Shimitzes' nuisance claim and IBP's defense to it are materially different from the nuisance claims litigated by Marmo and the Larsons, and because the Shimitzes have a negligence claim against IBP, the Court concludes that the purposes supporting the offensive use of collateral estoppel will not be served in this case. Accordingly, the Plaintiffs' Motion in Limine based on Collateral Estoppel will be denied.

**Statute of Limitations**

The Plaintiffs have asked the Court to reconsider the analysis contained in the Memorandum and Order dated February 7, 2005 (Filing No. 379), relating to the Defendant's motion for summary judgment on the negligence claims in light of a recent Nebraska Supreme Court decision. In the 2005 Memorandum and Order, the Court found genuine issues of material fact remained to be decided relative to the Defendant's motion for summary judgment on statute of limitations grounds. The Court denied the Defendant's motion. There is no motion for summary judgment now pending based on the statute of

limitations defense. While the Court is aware of the Nebraska Supreme Court's recent decision of *Alston v. Hormel Foods Corp.*, 730 N.W.2d 376 (Neb. April 20, 2007), *see McElroy v. Janssen Pharmaceutica, Inc.*, 2007 WL 1395585, 1 (D.Neb. May 9, 2007)(Kopf J.), the issuance of a decision by the Nebraska Supreme Court, without more, is not a sufficient reason to revisit the ruling. There is nothing that the Court would say, upon reconsideration of its prior analysis, that would affect the rights of the parties in this case as they now stand. Therefore, the Plaintiff's invitation to revisit the Memorandum and Order dated February 7, 2005, could be viewed as an invitation to issue an advisory opinion. The Court declines the invitation to do so. See *Mark v. Nix*, 983 F.2d 138, 140 (8th Cir. 1993).

**Deposition of Rick Shimitz**

The Defendant has filed a motion for leave to depose Plaintiff Rick Shimitz out of time. At the time the other plaintiffs' depositions were taken in the previously consolidated cases in 2002, Rick Shimitz was out of the District on active military duty and not available to give a deposition. Thus, in 2002, the Plaintiffs agreed to the Defendant's request to take his deposition out of time when he was discharged. In October 2004, Plaintiffs notified IBP that Rick Shimitz had been placed on administrative leave pending final discharge, that he was to serve a period of military confinement based on his plea of guilty to larceny charges, and that he would be available in Texas to give his deposition in this case. The Defendant did not notice Rick Shimitz's deposition at the time based on the manner in which these cases had been progressing, including the intervening trial in *Marmo*, the appeal, and the subsequent settlement negotiations related to the other previously consolidated cases.

Recently, the Defendant asked Plaintiffs to make Rick Shimitz available for a deposition, and the Plaintiffs refused the request as untimely. This motion followed.

The Court finds that the reasons for the Defendant's delay in seeking this deposition are reasonable under the circumstances, and the Defendant's motion will be granted. The deposition should be taken on or before July 11, 2007. Because there is some evidence before the Court that the Plaintiffs are unable to locate Rick Shimitz, the Court will also require that if the deposition is noticed but is not taken for any reason other than the Defendant's decision not to proceed, then Plaintiffs shall show cause by July 13, 2007, why the deposition was not given and whether Rick Shimitz's whereabouts are known.

For all these reasons,

IT IS ORDERED:

1. The Plaintiffs' motion for reconsideration of the order excluding Dr. Kilburn from testifying in Plaintiffs' case in chief (Filing No. 432) is denied;

2. The Plaintiffs' motion for partial summary judgment based on collateral estoppel (Filing No. 441) is denied;

3. The Plaintiffs' motion for reconsideration of the Memorandum and Order on the Defendant's statute of limitations defense (Filing No. 444) is denied;

4. The Defendant's motion for leave to take the deposition of Rick Shimitz out of time (Filing No. 450) is granted, and the deposition shall be completed on or before July 11, 2007; and

5. If the deposition of Rick Shimitz is not taken on or before July 11, 2007, for any cause other than the Defendant's decision not to proceed, then on or before July

13, 2007, the Plaintiffs shall show cause why the deposition was not given and whether Rick Shimitz's whereabouts are known.

DATED this 5th day of June, 2007.

BY THE COURT:

s/Laurie Smith Camp
United States District Judge